## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

DAWN A.,       §
    Plaintiff,    §
         §
v.          §   No. 5:23-CV-259-BW
         §
COMMISSIONER OF THE SOCIAL  §
SECURITY ADMINISTRATION,   §
    Defendant.    §

### MEMORANDUM OPINION AND ORDER

Plaintiff Dawn A. ("Plaintiff") brings this action pursuant to the Social Security Act (the "Act"), seeking review of the final decision of the Commissioner of Social Security (the "Commissioner"), that denied her application for Disability Insurance Benefits ("DIB") under Title II of the Act, and her application for Supplemental Security Income ("SSI") under Title XVI of the Act. (*See* Dkt. No. 1.) The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g) and 1383(c), and the parties consented to proceed before the undersigned in accordance with 28 U.S.C. § 636(b) and Special Order Nos. 3-350 and 3-354. (*See* Dkt. Nos. 21, 22.)

Plaintiff filed a brief on appeal (Dkt. No. 18) ("Pltf. Br."), to which the Commissioner filed a brief in response (Dkt. No. 19 ("Def. Br.")), and Plaintiff filed a reply brief (Dkt. No. 20) ("Reply"). After considering the pleadings, briefs, and administrative record, the Court finds that the Commissioner's decision is **AFFIRMED**.

# I. BACKGROUND

On July 15, 2021, Plaintiff protectively filed applications for DIB and SSI, alleging disability beginning November 11, 2020, due to depression, anxiety, and post-traumatic stress disorder ("PTSD"). (*See* Transcript ("Tr.") 210-23, 258.) The claims were denied initially on January 31, 2022 (Tr. 100-19), and again on reconsideration on September 30, 2022 (Tr. 121-38), after which Plaintiff timely requested an administrative hearing. (Tr. 14.)

On April 25, 2023, Administrative Law Judge Kevin Batik ("the ALJ") held a telephonic hearing,[1] at which Plaintiff appeared and testified. (Tr. 14.) Plaintiff was represented at the hearing by Chris Foster, an attorney. (Tr. 28.) Vickie D. Colenburg, an impartial vocational expert, also appeared and testified. *Id*. The ALJ issued an unfavorable decision on June 12, 2023, finding Plaintiff not disabled. (Tr. 11-27.) On October 5, 2023, the Appeals Council denied Plaintiff's request for further review. (Tr. 1-6.) The ALJ's June 12, 2023 decision thus became the "final decision" of the Commissioner subject to judicial review under 42 U.S.C. § 405(g).

# II. LEGAL STANDARDS

## A. District Court Review

Judicial review of the Commissioner's denial of benefits is limited to whether the Commissioner's position is supported by substantial evidence and whether the Commissioner applied the proper legal standards in evaluating the evidence. *See* 42

---

[1] Due to the extraordinary circumstance presented by the Coronavirus Disease 2019 ("COVID-19") Pandemic, all participants agreed to appear by telephone. (Tr. 14.)

U.S.C. § 405(g); *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014); *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Copeland*, 771 F.3d at 923. To determine whether substantial evidence of disability exists, four elements of proof must be weighted: (1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history. *See Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir.1972)).

The Commissioner, rather than the courts, must resolve conflicts in the evidence, including weighing conflicting testimony and determining witnesses' credibility, and the Court does not try the issues de novo. *See Martinez v. Chater*, 64 F.3d 172, 174 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Thus, the court may not reweigh the evidence or substitute its judgment for the Commissioner's but must scrutinize the entire record to ascertain whether substantial evidence supports the hearing decision. *See Copeland*, 771 F.3d at 923; *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988). The Court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

"Absent an error that affects the substantial rights of a party, administrative proceedings do not require 'procedural perfection.'" *Wilder v. Colvin*, No. 13-CV-

3014-P, 2014 WL 2931884, at *5 (N.D. Tex. June 30, 2014) (quoting *Taylor v. Astrue*,

706 F.3d 600, 603 (5th Cir. 2012)).  "The ALJ is not required to discuss every piece

of evidence in the record nor must the ALJ follow formalistic rules of articulation."

*Hunt v. Astrue*, No. 4:12-CV-244-Y, 2013 WL 2392880, at *7 (N.D. Tex. June 3,

2013) (citing *Castillo v. Barnhart*, 151 F. App'x 334, 335 (5th Cir. 2005)).  "Procedural

errors affect the substantial rights of a claimant only when they 'cast into doubt the

existence of substantial evidence to support the ALJ's decision.'"  *Wilder*, 2014 WL

2931884, at *5 (quoting *Morris v. Bowen*, 864 F.2d 333, 335 (5th Cir. 1988)).

"Remand is required only when there is a realistic possibility that the ALJ would

have reached a different conclusion absent the procedural error."  *Id.* (citing *January

v. Astrue*, 400 F. App'x 929, 933 (5th Cir. 2010)).

## B.    The Sequential Evaluation Process

"In order to qualify for disability insurance benefits or [supplemental security

income], a claimant must suffer from a disability."  *Copeland*. 771 F.3d at 923 (citing

42 U.S.C. § 423(d)(1)(A)).  The Act defines "disability" as the inability to engage in

substantial gainful activity by reason of any medically determinable physical or

mental impairment that can be expected to result in death or last for a continued

period of 12 months.  *See id.* § 423(d)(1)(A); *see also Copeland*, 771 F.3d at 923; *Cook v.

Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

An ALJ must follow a five-step sequential evaluation to determine whether a

claimant is disabled within the meaning of the Act.  *See Wren*, 925 F.2d at 125

(summarizing 20 C.F.R. § 404.1520(b)-(f)).  On the first four steps of the analysis, the

claimant has the initial burden of proving that he is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner on the fifth step to show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Id*. "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir.1987).

At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If the claimant is not engaged in substantial gainful work activity, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id*. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, the claimant is disabled. *Id*. § 404.1509. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or

mental work activities on a sustained basis notwithstanding limitations for the collective impairments. *See id*. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of her past relevant work. 20 C.F.R. § 404.1520(f). If the claimant can perform such requirements, then she is not disabled. *Id*. If an individual's impairment precludes her from performing past work, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that there is other gainful employment available in the national economy that the claimant is capable of performing. *Greenspan*, 38 F.3d at 236. This burden may be satisfied either by reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

### III. ALJ's FINDINGS

The ALJ analyzed Plaintiff's claim for benefits under the process described above and made the following findings in his June 12, 2023 decision:

1. The claimant meets the insured status requirements of the Social Security Act through March 31, 2021.

2. The claimant has not engaged in substantial gainful activity since June 18, 2019, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).

3. The claimant has the following severe impairments: anxiety, bipolar disorder, and post-traumatic stress disorder ("PTSD") (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the claimant is limited to understanding, remembering, and carrying out simple tasks and instructions and limited to occasional interaction with coworkers, supervisors, and the public.

6. The claimant has no past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on August 15, 1973, and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has a limited education (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969, and 416.969a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 18, 2019, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 16-22.)

Accordingly, the ALJ determined that, based on the application for a period of disability and disability insurance benefits, protectively filed on July 15, 2021, the claimant is not disabled under sections 216(i) and 223(d) of the Act. (Tr. 22.) The ALJ also determined that based on the application for supplemental security income protectively filed on July 15, 2021, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act. (*Id*.)

# IV.  ANALYSIS

Plaintiff asserts a single point of error, contending that the ALJ failed to consider the medical necessity and resulting vocational impact of the medical necessity for an emotional support animal ("ESA").  (*See* Pltf. Br. at 1, 6-8.) According to Plaintiff, treating psychiatric nurse practitioner Lisa Davenport ("Ms. Davenport") provided letters confirming the medical necessity of Plaintiff's dogs as ESAs, but the ALJ failed to consider the evidence.  (*See id*. at 6-8.)

The Commissioner argues in response that the ALJ's RFC finding was supported by substantial evidence, including Plaintiff's own reports and the expert medical findings, and Plaintiff has not shown a medical necessity that her dogs were required for psychosocial support.  (*See* Def. Resp. at 3-9.)  Further argues the Commissioner, Plaintiff admits she failed to produce the letters from Ms. Davenport, or any other evidence confirming the medical necessity of her dogs as ESAs, evidence which was her responsibility to provide.  (*See id*. at 4.)

Upon review, the Court finds that the ALJ properly considered the entire record, including the medical opinion evidence and treatment records showing limited and routine mental health treatment, as well as Plaintiff's testimony at the hearing, and the ALJ's RFC assessment was supported by substantial evidence. Furthermore, Plaintiff has not shown that the ALJ erred by not obtaining evidence of the medical-necessity letters from Ms. Davenport, evidence that Plaintiff and her representative were responsible for providing, and which has still yet to be produced.

**A.    The ALJ's RFC finding was supported by substantial evidence.**

RFC is what an individual can still do despite her limitations.  Social Security

Regulation ("SSR") 96-8p, 1996 WL 374184, at *2 (S.S.A. July 2, 1996).  It reflects

the individual's maximum remaining ability to do sustained work activity in an

ordinary work setting on a regular and continuing basis.  *Id.*; *see Myers v. Apfel*, 238

F.3d 617, 620 (5th Cir. 2001).  A regular and continuing basis is an eight-hour day,

five days a week, or an equivalent schedule.  SSR 96-8p, 1996 WL 374184, at *2.

RFC is not the least an individual can do but the most.  *Id.*  The RFC is a function-

by-function assessment, with both exertional and nonexertional factors to be

considered, and it is based upon all of the relevant evidence in the case record.  *Id.* at

3-6.  The ALJ has the sole responsibility for evaluating a claimant's RFC based on

the record.  20 C.F.R. § 404.1546(c); *see also Villa v. Sullivan*, 895 F.2d 1019, 1023

(5th Cir. 1990).  The ALJ must discuss the claimant's ability to perform sustained

work activity on a regular and continuing basis and resolve any inconsistencies in the

evidence.  SSR 96-8p, 1996 WL 374184, at *7.

In making the RFC assessment, the ALJ must consider all symptoms,

including pain, and the extent to which these symptoms can be reasonably accepted

as consistent with objective medical evidence and other evidence.  *See* 20 C.F.R.

§ 404.1529; SSR 16-3p, 2017 WL 5180304, at *2 (Oct. 25, 2017); SSR 96-8p, 1996

WL 374184, at *5.  The ALJ must also consider limitations and restrictions imposed

by all of an individual's impairments, even impairments that are not severe.  *See* SSR

96-8p, 1996 WL 374184, at *5.  The ALJ may draw reasonable inferences from the

evidence in making his decision, but the social security ruling also cautions that presumptions, speculation, and supposition do not constitute evidence. *See e.g.*, SSR 86-8, 1986 WL 68636, at *8 (1986), *superseded by* SSR 91-7c, 1991 WL 231791, at *1 (Aug. 1, 1991) (changing the ruling only to the extent the SSR discusses the former procedures used to determine disability in children).

The ALJ is not required to incorporate limitations in the RFC that he did not find the record supported. *See Muse v. Sullivan*, 925 F.2d 785, 790 (5th Cir. 1991) ("The ALJ as factfinder has the sole responsibility for weighing the evidence and may choose whichever physician's diagnosis is most supported by the record."). In reviewing the ALJ's decision, a finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

As the ALJ noted, Plaintiff alleged disability mainly due to a combination of mental health impairments. (*See* Tr. 19.) After careful consideration of the evidence, the ALJ found that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the evidence of record. (*See id.*) *See* SSR 96–7p, 1996 WL 374186, at *2 ("whenever the individual's statements . . . [regarding her] symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"); 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). An "ALJ's findings regarding the debilitating effect of

the subjective complaints are entitled to considerable judicial deference." *James v. Bowen*, 793 F.2d 702, 706 (5th Cir.1986).

First, the ALJ noted Plaintiff's treatment records showing that she has received limited and routine mental health treatment, which "does not provide strong support for [her] allegations of disabling anxiety." (Tr. 19.) He also noted that despite Plaintiff's allegations of significant issues with focus, and memory, her mental status examinations did not document significant memory, attention deficits, or other cognitive deficits. (Tr. 20.) The ALJ noted August 2019 medical records documenting Plaintiff's history of anxiety and depression due to her stepmother having recently passed, and on mental status examination, she was in acute distress and visibly upset, crying, and shaking. (Tr. 19, 333-34.) At that time, she was prescribed buspirone three times per day as needed for anxiety (Tr. 19, 335.)

April 2020 treatment notes show that Plaintiff had been taking fluoxetine but stopped because she continued to have depression and anxiety symptoms, and at that time, she reported increased crying, chest pain, fatigue, decreased motivation, and difficulty sleeping. (Tr. 19, 373.) She was referred to behavioral health and prescribed buspirone and Lexapro. (Tr. 19, 376.) In June 2020, Plaintiff reported that her depression was "ok," but she was having difficulty sleeping and was "constantly nervous, feeling paranoid[, and] feeling that [she] is always waiting for something bad to happen." (Tr. 19, 364.) In December 2020, a telephonic mental health assessment notes that Plaintiff was seeking treatment for worsening depression, anxiety, and panic, and she reported that "she isolates and cares for an

elderly parent" but she alleged "difficulty holding a position outside the home due to her mental health issues." (Tr. 19-20, 398.) Her mental status examination showed she was cooperative and had appropriate affect over the phone; she reported her thought process as "obsessive in thinking and disorganized in thought;" and she had good insight and normal memory. (Tr. 20, 398-99.) Plaintiff was assessed with bipolar 1 disorder. (Tr. 20, 398-99.)

Continuing with his review of the medical records, the ALJ noted January 2021 primary care treatment records indicating that Plaintiff's major depressive disorder was well controlled with her current treatment. (Tr. 20, 357.) In March 2021, she reported "her anxiety was through the roof" and "she [ ] had difficulty going out of her home into public settings." (Tr. 20, 423-25.) She also reported flashback dreams and issues falling asleep. (Tr. 20, 425.) In April 2021, Plaintiff reported that her medication for anxiety was not effective, and she was having frequent panic attacks, chest pain, and difficulty concentrating. (Tr. 20, 448.) At that visit, her Effexor and Ambien dosages were increased, and she was started on gabapentin and continued on buspirone. (Tr. 20, 458.)

Plaintiff reported ongoing anxiety symptoms in August 2021, and stated her depression was mainly due to her feeling sad about her anxiety and diminished concentration. (Tr. 20, 496.) In December 2021, she reported that her medications helped some. (Tr. 20, 547.) In February 2022, despite having some recent family stressors, Plaintiff reported some progress toward her treatment goal, and she was learning a new hobby and spending time with her pets. (Tr. 10, 643.) By April 2022,

she reported her depression and sleep were under control, but she still alleged issues with anxiety. (Tr, 20, 653.) In August 2022, she reported ongoing anxiety and focus issues. (Tr. 20, 868.) On examination, she had no suicidal ideation; she had edgy and anxious mood and irritable and dysphoric affect; intact memory and orientation; fair insight and judgment; and linear, logical, and goal-directed thoughts. (*Id.*) Her complaints of anxiety continued in December 2022, and she was nervous about seeing her family. (Tr. 20, 884.)

The ALJ also discussed Plaintiff's allegations of social anxiety, noting that, while there were some indications of social anxiety documented in Plaintiff's mental health treatment records, the record as a whole did not demonstrate work-preclusive limitations, especially as to unskilled work with limited interaction with others, such as assessed in the RFC here. (Tr. 19.) The ALJ also noted that Plaintiff had worked almost exclusively in "publicly-facing" settings, but there did not appear to be any attempts at trying "socially-isolated work." (Tr. 20.)  And although she alleged what amounts to crippling fear of leaving her house, the ALJ noted that in May 2021, records indicate that Plaintiff had been visiting her friend in the nursing home a few times a week. (Tr. 20, 476.) The ALJ also noted treatment notes in January 2020 documenting that Plaintiff was caring for an elderly parent. (Tr. 20, 298.) Based on the foregoing, the ALJ reasonably concluded that the medical evidence overall supported a finding that Plaintiff's impairments would be accommodated by the RFC limitations assessed. (Tr. 20.)

The ALJ also considered the medical opinion evidence of record. (Tr. 20-21.) Effective for claims filed on or after March 27, 2017, the Social Security Agency comprehensively revised its regulations governing medical opinion evidence creating a new regulatory framework. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017) (technical errors corrected by 82 Fed. Reg. 15, 132-01 (March 27, 2017). Here, Plaintiff filed her claims on July 15, 2021, and therefore, the 2017 regulations are applicable to her claims.

Under these revised regulations, the ALJ must determine the persuasiveness of a physician's medical opinion. 20 C.F.R. § 416.920c. To determine the persuasiveness of each medical opinion, the ALJ considers supportability, consistency, relationship with the plaintiff, specialization, and other factors that tend to support or contradict a medical opinion. *Id*. §§ 404.1520c(c)(1)-(5), 416.920c(c)(1)-(5). The most important factors are supportability and consistency. *Id*. §§ 404.1520c(b)(2), 416.920c(b)(2). When considering medical opinions, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. §§ 404.1520c(a), 416.920c(a); *Stephens v. Saul*, 3:20-CV-823-BH, 2020 WL 7122860, at *5 (N.D. Tex. Dec. 4, 2020) (citation omitted); *accord Winston v. Berryhill*, 755 F. App'x 395, 402 n.4 (5th Cir. 2018) (citation omitted).

The ALJ must also explain the persuasiveness of medical opinions. 20 C.F.R. §§ 404.1520c(b), 416.920c(b). An ALJ will discuss how he considered the supportability and consistency factors for a medical source's medical opinions in his

14

determination or decision.  *Id*.  "At a minimum, the ALJ's discussion [of these factors] must give enough reasons to permit meaningful judicial review."  *Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022) (citations omitted).

Here, the ALJ also considered the opinions of State agency psychological consultants Renee McPherson-Salandy, Ph.D. (Tr. 64), and Catherine Wise, M.D. (Tr. 79), the only medical opinions of record, and found them "somewhat persuasive."  (Tr. 21.)  Dr. McPherson-Salandy reviewed Plaintiff's file in January 2022, and Dr. Wise reviewed the file in September 2022, and they both assessed that Plaintiff "could understand, remember, and carry out detailed, but not complex instructions."  (Tr. 46-56, 57-67.)  In finding their opinions somewhat persuasive, the ALJ explained that both opinions were supported by the providers' review and summarization of the medical evidence, as well as consistent with each other and with other medical evidence of record, including Plaintiff's treatment records showing no major cognitive, memory, or attention issues.  (Tr. 21.)  While the ALJ found this aspect of the doctors' opinions persuasive, he found that the record supported further limitation "to unskilled work to reduce the mental demands of any work activity."  (*Id*.)  The ALJ also found that the evidence supported a moderate limitation in interacting with others, and therefore, included in the RFC a limitation to no more than occasional interaction with others.  (*Id*.)

Based on the foregoing, the Court finds that the ALJ properly considered the State agency psychological consultants' opinions, and the ALJ's persuasiveness

analysis, including his discussion of the two most important factors of consistency and supportability, was supported by substantial evidence.  (Tr. 21.)  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Furthermore, State agency psychological consultants are experts in the Social Security disability programs and their findings must be treated as expert opinion evidence.  20 C.F.R. § 404.1513a(b)(1).  Although the ALJ's mental RFC assessment included more functional limitations than assessed by Dr. McPherson-Salandy and Dr. Wise, the ALJ was not required to adopt the consultants' RFC opinions wholesale, choosing instead to impose some greater restrictions in the RFC.  As noted previously, the RFC is an administrative finding of fact, and the ALJ, not a medical source, is responsible for this assessment. *Taylor v. Astrue*, 706 F.3d at 602-03 (ALJ has the "sole responsibility" to assess the RFC, and the ALJ is not required to adopt a specific physician's assessment. Furthermore, it "is the responsibility of the ALJ to interpret 'the medical evidence to determine [a claimant's] capacity for work.'" *Miller v. Kijakazi*, No. 22-60541, 2023 WL 234773, at *4 (5th Cir. Jan. 18, 2023) (citing *Fontenot v. Colvin*, 661 F. App'x 274, 277 (5th Cir. 2016))).

**B.    The ALJ properly considered the medical necessity and vocational impact of emotional support animals.**

Plaintiff argues that the ALJ's RFC finding was not supported by substantial evidence because the ALJ "failed to consider probative evidence from Plaintiff's treating mental health provider APN Davenport" regarding a need for an ESA.  (*See* Pltf. Br. at 6-8.)  The record reflects that Plaintiff received outpatient mental health

services from Ms. Davenport and other providers at StarCare Specialty Health System.  (*See* Tr. 749-910.)  Plaintiff alleges that "in September 2021, Ms. Davenport provided Plaintiff letters confirming the medical necessity of [Plaintiff's] dogs as emotional support animals."  (*See id*. at 6 (citing Tr. 534, 627 (duplicate), 809 (duplicate).)  Plaintiff admits, however, that the letters from Ms. Davenport are not in the record.  (*See* Pltf. Br. at 8.)

Plaintiff's mental health history with StarCare note that "[Plaintiff] identifies her two dogs as her primary source of support," (Tr. at 454), and frequently discussed how much she enjoyed spending time with her dogs and wanted to spend more time with them because it improved her mood.  (Tr. 449, 499, 525, 529-30, 631, 653, 667, 810, 822, 857, 867.)  In fact, spending more time with her dogs was specifically listed as a "recovery plan objective" for Plaintiff.  (Tr. 525, 529-30.)  During a telephonic mental health assessment with StarCare clinician Micaela Reschman on August 5, 2021, "[Plaintiff] stated she wants to register her dogs as emotional support animals so she will be able to take them with her as this helps with her anxiety."  (Tr. 512.)  Ms. Reschman responded that she "will reach out to [Ms.] Davenport per the client's request and will notify the client when a response is received."  (*Id*.)  During an in-person visit on September 29, 2021, Plaintiff and Ms. Reschman again discussed emotional support animals, and Ms. Reschman indicated she would follow up with Ms. Davenport "to determine if this will benefit the client."  Thereafter, on September 30, 2021, Ms. Reschman "contacted [Plaintiff] via text message to inform her that [Ms.] Davenport will provide the requested ESA

letters for the client and can be picked up at the front desk at SRC.  Client expressed thanks and confirmed understanding." (*See* Tr. 534, 627, 809.)  As noted previously, there is no evidence of these letters in the record.

Notably, subsequent visits with Ms. Davenport and other clinicians at StarCare, indicate no further mention of the letters that Ms. Davenport was allegedly to have provided as evidence of the medical necessity for emotional support animals. (*See, e.g.*, Tr. 808, 822, 867.)   In fact, on December 9, 2021, Plaintiff's first visit with Ms. Davenport since the ESA letters had been requested, the treatment record contains no mention of the letters and does not indicate whether Ms. Davenport actually provided the letters as Plaintiff had requested, or if Ms. Davenport did provide the letters, whether Plaintiff actually retrieved them.  (*See* Tr. 808-19.)

Despite Plaintiff's admission that the letters are not in the record, and her failure to provide any evidence documenting medical necessity for emotional support animals, Plaintiff faults the ALJ for not requesting the paperwork, ignoring her own responsibility for providing evidence of her disability.  (*See* Pltf. Br. at 8.)  A claimant has the burden of proving her disability, as defined by the Act, to be entitled to Social Security disability benefits.  *Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995); *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988).  Furthermore, during Plaintiff's 2023 administrative hearing, Plaintiff's representative averred that he had reviewed the file, and the record was complete.  (Tr. 31.)  Plaintiff's new attorney now presents for the first time a new claim of error based on this yet-to-be-submitted evidence from Ms. Davenport.  "Acquiring a new lawyer with a new idea is not good cause for a

remand." *King v. Colvin*, No. 3:11-CV-1387-BN, 2013 WL 6162965, at *5 (N.D. Tex. Nov. 22, 2013); *see also Geyen v. Sec. of Health & Humans Servs.*, 850 F.2d 263, 264 (5th Cir.1988) (refusing to remand case just because plaintiff hired "a new lawyer with a new idea"); *Lister v. Astrue*, No. 3:10-CV-1436–BD, 2011 WL 4424390, at *8 (N.D. Tex. Sept.22, 2011) (holding failure of prior representative to submit evidence is not good cause to justify remand).

Plaintiff further argues that the ALJ "should have requested Plaintiff provide the paperwork from [Ms.] Davenport" to develop the record regarding "Plaintiff's medical need for an emotional support animal and its impact on her ability to work." (*See* Pltf. Br. at 6-8.)  The ALJ has a duty to fully develop the record when evaluating an applicant's claim for disability benefits. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).  That duty, however, is "triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (5th Cir. 2001).

Here, the ALJ considered a medical record of 900-plus pages that included several years of mental health treatment notes from Ms. Davenport and other mental health providers, as well as the opinions of two State agency psychological consultants—neither of whom found that the evidence showed a medical necessity for emotional support animals or any resulting vocational impact.  Furthermore, there is no indication that the evidence before the ALJ was ambiguous, inadequate, inconsistent, or that he lacked sufficient facts upon which to make a disability decision. *See Hardine v. Kijakazi*, No. 21-60226, 2022 WL 2070399, at *2 (5th Cir.

19

June 8, 2022) (unpublished); *Mayes v. Massanari*, 276 F.3d 453, 459-60 (5th Cir. 2001). Accordingly, the Court finds the ALJ did not have a duty to further develop the evidence with regard to Plaintiff's use of emotional supported animals.

Plaintiff also asserts that "the record is replete with references that Plaintiff's anxiety is best controlled when she is spending time with her dogs." (*See* Pltf. Br. at 8 (citing Tr. 449, 499, 525, 529-30).) The Court disagrees with Plaintiff's characterization of the cited pages, as they primarily reflect Plaintiff's own statements to her mental health providers regarding how much she enjoyed spending time with her two dogs and wanted to spend more time at home with them. Even if the Court were to interpret the cited remarks as support for Plaintiff's argument, under the highly deferential standard of review, Plaintiff must do more than cite to some evidence that supports her claim of error. Judicial review of the Commissioner's final decision is exceedingly deferential and is limited to determining whether there is substantial evidence to support the decision, and whether the adjudicator applied proper legal standards. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. at 401; *Taylor v. Astrue*, 706 F.3d at 602.

Finally, the cases Plaintiff cites in support of her argument are factually distinct from this matter. (*See* Pltf. Br. at 7-8 (citing *Thomas H. v. Kijakazi*, No. 4:21-CV-04253, 2023 WL 2541713, at *7 (S.D. Tex. Mar. 16, 2023) (citing, in turn, *Santos v. Colvin*, No. 3:12-CV-05827-KLS, 2013 WL 5176846, at *2, *6 (W.D. Wash. Sept. 12, 2013)).) In *Santos*, the court found that the ALJ failed to properly take into account a claimant's use of a service dog. 2013 WL 5176846, at *5-6. But the court

20

also found that the record indicated the "use of a service dog ha[d] been of significant benefit to [the claimant] in terms of his mental health symptoms." *Id*. (citing medical records supporting the benefit to the claimant). Unlike *Santos*, here there is no "evidence in the record that [P]laintiff's use of a service dog is medically necessary." *Id*. at *6.

Plaintiff also objects to the ALJ's failure to mention "the medical necessity of [her] emotional support dogs"; his references to her "dogs as pets;" and his citations to her testimony that she "stays in her room a lot, hangs out with her dogs, takes a shower, then puts her pajamas back on." (Pltf. Br. at 7 (citing Tr. 20, citing, in turn, Tr. 36).) While Plaintiff disagrees with the ALJ reliance, in part, on her hearing testimony in determining her RFC, this does not support her claim of error, much less harmful error.

As discussed above, the ALJ relied on a fully developed record to formulate his RFC determination, and Plaintiff does not direct the Court to any objective medical evidence indicating the medical necessity for emotional support animals. Although Plaintiff attempts to argue that Ms. Reschman's note that Ms. Davenport "will provide the requested ESA letters" (Tr. 534, 627, 809) is evidence of medical necessity, the letters have not been produced, and the subsequent treatment records fail to show any evidence that "plaintiff's use of a service dog [was] medically necessary." *Duenes v. Kijakazi*, No. CV 4:20-2629, 2022 WL 19614, at *6 (S.D. Tex. Jan. 3, 2022).

Based on the foregoing, substantial evidence in the record supports the ALJ's RFC determination. As discussed above, the ALJ considered Plaintiff's complaints and reasonably concluded "[a]fter careful consideration of all the evidence," that "the objective medical evidence does not provide strong support for the claimant's allegations of disabling anxiety." (Tr. 19.) Ultimately, Plaintiff's arguments amount to an invitation for the court to reweigh the evidence, which is not proper under the substantial evidence standard of review. *See Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (providing that a reviewing court may not reweigh the evidence or substitute its judgment for the ALJ's judgment even if the evidence weighs against the ALJ's determination); *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018).

## CONCLUSION

The Commissioner's decision is **AFFIRMED**, and this case is **DISMISSED WITH PREJUDICE**.

**SO ORDERED** on November 8, 2024.

_____
BRIAN McKAY
UNITED STATES MAGISTRATE JUDGE